## APPEAL OF FIRST NATIONAL BANK OF PLATTSBURG, MO.

Docket No. 674.    Decided July 29, 1926.

1. On the evidence, *held*, that the invested capital of the petitioner was correctly determined by the Commissioner.

2. The Commissioner granted a refund claim filed by the petitioner and afterwards reversed that ruling and asserted a deficiency based on the facts involved in the claim for refund. *Held*, that the granting of the refund does not estop the Commissioner from reversing such action and asserting a deficiency.

*E. H. Whitcombe, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

The notice upon which this proceeding is based asserts deficiencies for the years 1917 to 1919, inclusive, in the total amount of $1,535.61. The controversy arises from the refusal of the Commissioner to include the total alleged value at date of acquisition of a certain tract of farm land, acquired in part as the result of legal action for the collection of a debt, in the computation of the petitioner's invested capital for each of the taxable years. The petitioner also contends that a certain refund ruling made by the Commissioner estops the Government from the collection of the deficiencies herein involved.

### FINDINGS OF FACT.

The petitioner is a corporation duly formed and operating under the banking laws of the United States and has been engaged in the banking business at Plattsburg, Mo., since the date of its incorporation.

In the year 1898, the petitioner discounted an unsecured note for one of its patrons in the amount of $4,746. Shortly thereafter the maker of the note undertook to evade payment by deeding his property to creditors and members of his family, whereupon the petitioner began a legal action to secure collection of said note and attached certain parcels of real estate owned by the borrower. After litigation that continued for about 14 years, the petitioner prevailed in the Supreme Court of the State of Missouri. The land involved in this appeal was sold by the sheriff to satisfy the judgment awarded in the action to secure the collection of the unsecured note, and the petitioner bought it in on a single nominal bid, the amount of which is not disclosed by the record.

In addition to the principal and interest of the original loan, the petitioner, in order to get a clear title to the land, paid off a mortgage thereon, extinguished the dower rights of the wife of the borrower, and paid attorney's fees and other costs of litigation. The parties agree that, at the date an unincumbered title was acquired, the total cost of the land was $21,000, and that it was taken into the assets of the petitioner in that amount and so carried on the books until January 3, 1920, when it was sold at a price $14,325 in excess of book value. The petitioner included the profits from such sale in its income and profits-tax return for 1920.

On or about January 3, 1920, the petitioner filed a claim for refund of taxes alleged to have been erroneously assessed and col-

lected by the Commissioner for the years 1914 to 1918, inclusive. The basis of such refund claim was the taxpayer's request that the amount of $14,325 be included in the computation of its invested capital for the years involved as an element of earned surplus resulting from the transaction in which land of an alleged value of $35,325 was obtained at a total cost of $21,000. On August 9, 1922, the Commissioner issued a notice of refund and certificate of over-assessment to the petitioner in which such claim, in material substance, including the claim for additional invested capital, was allowed.

Resulting from a further audit of the petitioner's income and profits tax returns for the years 1914 to 1919, inclusive, the Commissioner reversed his previous determination allowing refunds for the years 1914 to 1918, inclusive, and asserted deficiencies for the years 1917, 1918, and 1919, in the respective amounts of $181.61, $314.30 and $1,039.70.

OPINION.

LANSDON: The petitioner's first contention is that the difference between the cost, $21,000, and the alleged fair market value, $35,325, of a certain parcel of farm lands averred to have been acquired in satisfaction of a debt should be included in the computation of its invested capital from the date of the acquisition of such land. To prevail on this point the petitioner must prove that the land in question was acquired in satisfaction of a debt, that at that time it had the value claimed, and that the difference between cost and value falls within the statutory definition of some one of the several elements of invested capital.

The Board is not convinced that the land in question was acquired in satisfaction of a debt. It is true that a debt existed, that the petitioner sued for recovery and prevailed in the Supreme Court of the State of Missouri. It is not true, however, that the judgment of the court vested the title to the land in the petitioner. The judgment was that the land, upon which the petitioner had placed an attachment as part of the legal proceedings for recovery of the debt should be sold by the sheriff and the proceeds of such sale applied in the liquidation of the debt. To protect its interests the petitioner bought the land and received a sheriff's deed therefor. To secure complete possession and eliminate all adverse interests in such land, the petitioner also paid off a mortgage on the land and extinguished dower rights of the wife of the prior owner at a cost of $1,500. To us it seems clear that the land in question was acquired by purchase, and that the debt involved was, in fact, only a part of the purchase price.

Upon acquiring title the petitioner took the land into its books of account as an asset at cost, which, it is agreed, was $21,000. If any

greater amount is to be included in invested capital it is necessary for the taxpayer to prove the value in excess of cost that it acquired when title was taken. This it has not even attempted to do. The sheriff's sale was a public proceeding at which anyone might bid. The fact that no one but the petitioner made an offer is a sound basis for the conclusion that others, knowing the total incumbrances to be removed before title could be cleared, did not believe that the land then had a value in excess of $21,000, which we find was the value of the farm when acquired by the petitioner. The taxpayer having failed to prove that the land was acquired in satisfaction of a debt or that it had any value in excess of cost at the date of acquisition, it is not necessary to discuss the petitioner's contentions further as to merit.

The petitioner also contends that the Commissioner having once approved a claim for refund of taxes based on its demand for inclusion of the alleged market value over cost at acquisition, such approval may not afterwards be reversed to its prejudice. The evidence disclosed that, upon a review of all the facts, the Commissioner issued a certificate of overassessment and a notice of refund on or about August 9, 1922, and that on or about September 18, 1924, he reversed such action and asserted the deficiency here in question. The finding of an overassessment and the reversal of such finding were acts of the same Commissioner. We have heretofore decided this question against the petitioner's contention in the *Appeal of Dallas Brass & Copper Co.*, 3 B. T. A. 856; and *Appeal of Warner Sugar Refining Co.*, 4 B. T. A. 5.

> *The deficiencies are: For 1917, $181.61; for 1918, $314.30; and for 1919, $1,039.70. Order will be entered accordingly.*

SMITH and STERNHAGEN concur in the result only.